at all. Judge Gould is with us by telephone from Seattle. Judge Gould, are you here? Yes, I'm here. Can you hear? I can hear you perfectly. Very well. Then we may proceed. Good morning. I'm Neil Papiano, and I represent Mr. Pincay and Mr. McCarran. Good morning. If I may, for just a moment, I'd like to do just a bit of background because I think it's significant. As you probably know, this case was filed 15 years ago. It was filed with respect to some money that was taken from these two jockeys. They're both renowned jockeys, the number one and number three jockeys in the world. Since that time, they have not received any of their money back. They have received judgments, and they have both retired, both because of injuries. But money still has not been returned. With respect to the facts of the case and where we are. How do we know this is true, what you just told us? I'm sorry, I didn't hear you. How do we know? Is this in the record? No, it is not in the record. So you're making a jury argument here based on extra evidence?  Oh, sorry. And we have to consider it in deciding our case? I just wanted to question this. These facts that are not on the record, we don't know are true? I'm sorry, I'm not. We have to consider these facts that are not in the record, and we don't know are true? We're supposed to consider them? Not particularly. You're just telling us things. You're using up your time in the argument, telling us things. I understand. The significance is only that the case is not new. It's been here 15 years. It's been up twice. That's a matter of record. What your clients are now doing, whether they're injured, whether they're retired and all that, is just something you're bringing in to sort of influence the jury. That's Rebecca. Mr. Papillon, why don't you proceed with your argument? With respect to the situation, these are very experienced lawyers, as we all know. This is alleged to be a mistake by these very experienced lawyers with respect to a very, very clear Rule 4. The rule could not be more clear. I'm sorry, you don't think it's a mistake? Pardon me? You say it's alleged to be a mistake. Your Honor, I'm sorry. You say it's alleged to be a mistake. Are you saying it's not a mistake? I thought the district court found, the district court was in fact found it was a mistake. So when you say alleged, what do you mean by that? The district court did say that. Okay. And the district court had a record on which it could find the mistake. I think not, Your Honor. I'm not sure it had any record. You think that the district court should have found this was deliberate? They waited 60 days? The district court had. Knowing it was supposed to be 30 days? Is that what you're saying? Yes. The district court had a. What? The district court had before it the affidavit or declaration of one of the parties sitting here. And that's all it had, and it made a finding, and it wouldn't be much more useful for us to assume that those are the facts, because those are the facts that were found, and go on and discuss the legal issues. Well, I'm not assuming that they are not the facts. Well, you said alleged. You said alleged, which suggests to me that you are challenging that. And if you are challenging it, I think we need to talk about it. I apologize for that. I'm not challenging that. I guess I'm using. This is not a jury, Mr. Papiano. I guess I'm using a legal term. An incorrect legal term. The district court did find that as a matter of fact, I believe, that one of the attorneys had assigned the determination with respect to how many days there were to file the appeal to a clerk, a non-attorney. I think that's a significant fact for you, and significant because it indicates that it was. Counsel, I thought it was a little simpler than that. The lawyer handling the case was out of town. He called his office. The calendar clerk in the office said it's not due until such and such a date, which was wrong. And so the attorney thought he had until such and such a date. Now, that was the usual calendar clerk for the law. Is that right? That's what I understand to be the fact as stated. And you're saying that's always inexcusable as a matter of law when a lawyer does that. Correct. Why is it always inexcusable? Particularly in this case. Why is it always inexcusable as a matter of law? Because with the situation in which a law is involved, I think we probably all know that to assign that to a non-lawyer, no matter what the excuse may be. Suppose he hadn't done that. Suppose he had looked at the rule himself and made the same mistake. Would that be different? If the lawyer looked at the rule himself. I think not. His eyes glazed over, and he did notice at the 60 days. I think it would not be a lesser mistake, but this compounds the mistake. We have here a very clear. This isn't the case as in Pioneer where it was somewhat fuzzy as to what was meant by certain words. Here you have a very clear rule that we all know about. That cuts against your argument, doesn't it? If the lawyer delegates something to a subordinate, and the subordinate, because of lack of legal training, makes a mistake, then you could say, well, he shouldn't have delegated. But a lawyer and a paralegal can read 30 and 60 equally well. So this is not a situation where delegating it, their responsibility somehow diminishes expertise on point. So it seems to me the fact it's a clear rule really hurts your argument. The primary responsibility, I hope we can all agree, rests with the lawyer himself. But you are answering Judge Berzon's question, which was, would it be different if the lawyer had made the mistake himself? No. It wouldn't be different. So we can cut the paralegal out of this. It's not really an issue. You should, and I agree with that. That's exactly my point. It's the lawyer's problem, not the paralegal's problem. Well, when you say responsibility, when you say it's the lawyer's problem, I understand that to mean that the lawyer is liable in a malpractice action if it amounts to negligence with damages, regardless of whether the paralegal or the calendar clerk, rather than the lawyer, made the error. Because the person works for the lawyer. Well, that presents a lot of other facts, but I assume that that would be correct. But I can't see. It depends on the facts. I don't understand, and you already know I don't understand from the panel opinion. I do, indeed. I don't understand why this particular area of delegation is special. And that's what I really want some explanation for. It seems to me, if anything, it's more defensible than, say, having a summer law clerk, who is not yet admitted to the bar, summarizing depositions for you, which many lawyers in large firms do. Very significant differences, and many lawyers in large firms do that. But in summarizing a deposition, you don't make legal decisions. Well, you make what may be critical decisions for the client about what the lawyer in charge of the litigation needs to know about what the witness said. Well, even in those instances, if there is any doubt, it's the lawyer's responsibility to read the deposition. And in this case. When you say responsibility, that's why I keep getting lost. Mr. Papiano, let me ask you a question in a slightly different way. Is there any case that you're aware of where the lawyer has delegated the legal question of how many days I have to appeal, as contrasted with saying we have 30 days to appeal to a paralegal or secretarial or administrative assistant who then screws up? No, I'm not aware of any. There's a difference in the degree of delegation, right? Well, I don't think, if I may answer your question this way and then get back to it, I don't think that a lawyer can delegate a legal issue to a non-legal party and escape and use that as any excuse for any error of law. Let me sort out two issues here on the calendaring error. Let's say the lawyer knows the deadline. And let's say the deadline is 30 days. And let's say the lawyer makes an error himself, actually a very common one. He just says, well, today is January 28th, so it's due February 28th. Or today is, even more commonly, February 18th, so it's due March 18th. And he just miscounts days because February has 28 days or it has 29 days that year. Or he forgets about a 31-day month. And instead of counting it out with his finger, he just adds a month to whatever day he's at. Inexcusable? No, there is a case directly on that. And I can't remember the name of it, but if I look in my book here, I can find it. There's a case in which a lawyer miscounted the days as a 30-day or 31-day month and miscounted it. And the court said that that was excusable and allowed that to be filed. Which case was that now? Do you remember? I don't remember. If that's excusable, why isn't it excusable when you call your calendar clerk? Well, there's a number of reasons here, if I may. First, this is not a one-day. This is a 22-day situation. And this case has, as I said, been around for 15 years. Doesn't the 15 years argue in favor of giving the trial judge the discretion to kind of know who's been naughty, who's been nice, who deserves a break, assess the prejudice? I mean, doesn't the fact that this judge is intimately familiar with this case for 15 years suggest we ought to give some deference to the judge's discretion on this? Well, I certainly hope it doesn't mean who's been naughty and who's been nice. I mean, he knows who's a goof-off and who isn't, who's been diligent, who hasn't. I don't think this is a matter of goof-off, and I'm not making that accusation. I think this is a matter of what is the rule in a situation like this? And I think, as far as I could find, the only case that said you missed by a day, you're okay if you miscounted the month. We know what the rule is because the Supreme Court told us in Pioneer. It says you do a balancing. That's what the rule is. The rule is you don't have a rule. You have a balancing of factors. And in response to Justice Sotomayor's question, why isn't the answer to that the judge does the balancing and we abuse the discretion? The judge is more familiar with the parties, closer, can find facts, can find whether it's an alleged error or maybe a deliberate omission or something. And then it balances, and then it comes to us, and we ask ourselves the question, was the judge drunk or crazy when he made that decision? And if the answer is no, then we're firm. Well, why isn't that the answer? That gets into all of the problems of forgivable neglect, if there is such a thing. Is it really forgivable neglect to delegate? It's not forgivable, much as the rule is excusable. Excusable. Is it excusable neglect to do that? This case, the reason I mentioned it had been up and down so many times, these same people, these same lawyers have had this case, and it has been up, and they didn't miss any previous filing dates. They knew the filing dates at those times. Would they forget it in between? Is that excusable? But can't that also cut in their favor if they have always made their filing dates to, I mean, in the judge deciding who the judge believes in terms of why something occurred and on an abuse of discretion standard? I mean, we're not, we didn't hear, you know, we don't know the parties. We didn't hear all of that. We're just reviewing the judge for abuse of discretion. Let's say the judge had gone your way in terms of, well, but, you know, and but just, you know, sort of in tweaking, went through the pioneer factors and tweaking the record but had found that it was not excusable. Wouldn't that, wouldn't we be able to affirm it as well because the judge had gone through all those factors, seen the people, but had just made some credibility findings one way or the other? Certainly you could have done that because that would have been in accordance with the cases and the law. The question is. Well, but I think, but the, what you're asking us to do is as a matter of law, say when this particular act occurs, that that's it, you know, that there isn't a way, that you don't look to all of those factors and you don't, you know, exercise your discretion. Well, I don't think that there is a waiting in that sense. If you would, I'm sure that you're familiar with the treatise by Robert Stern, who was a member of the committee who decided these rules, and he said in his treatise at 41 Federal Decisions, page 299. All right, but that treatise has been just overcome by history, it seems to me, both by pioneer and by the 2002 amendments and the comments to the 2000 amendments. And we now know that excusable neglect doesn't mean something extraordinary and unusual, which is what history has said. It doesn't mean snow. It doesn't mean illness. It means neglect. Well, but pioneer, I'm not, I don't believe pioneer, I think pioneer was a situation of confusion. The words used were not the customary words used by lawyers. But at a more fundamental level, doesn't pioneer say that there aren't any per se rules here? I mean, the real question in this case has been a legal question. Does pioneer admit of per se rules, period? I think, I wasn't able to find anything in pioneer that said there are no more per se rules. I'm not sure that that's a question that was maybe in their saying that there should be a weight of factors, that they're saying that there's no per se rule. And the fact that they said there was confusion, you can read to say that there are no per se rules. But I didn't think it was that strong. Well, let me ask it a different way. Is there any circuit court that has said that a lawyer's misunderstanding of a clear rule is excusable neglect? Yes. I think pioneer said that. And I think that, and I think I can read that inadvertent ignorance of the rules or mistakes in construing the rules do not usually under the, because that's the disquasification that I'm curious to focus on, do not usually constitute excusable neglect. Okay. You haven't answered my question at all. That's what the Supreme Court says. They don't usually constitute excusable neglect. And Kyle said the same thing. And so that means they can, but not usually. So then my question is, the circuit court that has looked at this question where you had a clear rule, have any of them determined that a failure to understand a clear rule falls within this exception, in other words, may be excusable neglect? I think I've read most of the cases in that field, but I can't remember one that said that. Let me repeat it. The first, second, third, seventh, eighth, and eleventh circuits have all said that when a rule is clear and unambiguous that one weights the pioneer factors heavily on the side of being inexcusable. And this Court, in Kyle, Gross, Grant, and Spicer, has said the same thing. Or am I just reading those cases wrong? This Court in Kyle cited, as I'm sure you know, the Third Circuit Court in the Dominick Hess Oil case and set out six factors to be reviewed. Well, Mr. Papagianni, I mean, do you have to make any argument in this case other than this was a clear rule? There's no ambiguity about it. There cannot be an excuse for misreading a clear, unambiguous rule. End of it. I think that's right, although I think you can go beyond that. If you can make that argument, it would be wrong, wouldn't it? No, I don't think so. And there's a key point. What can we say? Make mistakes. I mean, this is what you start with a presupposition of a mistake, and then you balance. Then you look at other factors. And excuse can encompass many things. It doesn't mean, oh, you have a good reason for it. It can also mean no harm, no foul. You understand that concept of excuse? You know, you did something really horrible, totally stupid, but nothing came of it, so we're going to excuse it. One of the reasons I brought up the fact that this case has been here for 15 years, this is not a no harm, no foul. Well, what the judge said, what the district judge said in the exercise of his discretion, is that Gearside lost nothing on account of his giving relief from the delay, except for a windfall gain on account of a few weeks. It wasn't the whole 12 years that they sat on their hands. It was a few weeks. And that's always true, as several of the cases have said. It's always true in every case. When there's a short extension, it's always true that you don't. It's not a severe prejudice. Let me ask you about this one sentence in Pioneer. It says, the Supreme Court says, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control. Now, that word carelessness is the one that attracts my attention, because carelessness means negligence. You're liable for malpractice if you make a careless mistake to your client's detriment. So I'm thinking, Congress here is saying, even where there isn't any good excuse, where it's just flat-out careless, the district court still has the power to grant relief. And it seems to me that your argument is inconsistent with that sentence in Pioneer, and I'd like you to explain why I'm mistaken. The district court, obviously, I think everybody had agreed, the district court has the power, and as does the other courts, but it has been consistently held that attorney's negligence is not usually, and that's why I want to bring that up. Not usually means sometimes yes, usually no. Sometimes under extraordinary circumstances. We had the case in which someone was in Africa and couldn't get back. I don't remember the name of that case, but it was. Well, that would be beyond the party's control, so it wouldn't deal with the word carelessness. It wouldn't deal with carelessness, but it would deal with an excuse, excusable neglect. Carelessness is not excusable. Well, what could be more careless than to assign when you have to? But the Supreme Court says carelessness can be okay. Well, under certain circumstances, I suppose that's right, but it depends on the facts of the situation. I think you have to look at the facts here. Well, doesn't it matter that, I mean, he didn't ask the janitor for this advice, he didn't check with the waitress at Denny's, or, you know, go to a tarot reader. He called upon someone who would reasonably be expected to know the answer. Well, the attorney himself should, and experienced attorney himself should know the answer. Well, my question is why a paralegal should know, or assistant, should know the answer. Assistant, not even a paralegal. Well, I think, you know, these days there's not exactly a fine line between assistant, paralegal, whatever, executive, lawyer. But my question is should, is it excusable for a lawyer when an assistant says the rule says X, is it excusable for a lawyer to say, okay, I'll take that as a given, or does the lawyer have a responsibility himself or herself to read and understand the rule? Certainly has that responsibility, and certainly does not, is not able to say that a nonparty can make that decision. But what floats your boat? Let's give you that point. Could we hear the answer, please? Could I just answer for just one second? You use the term in this day and age, and it takes probably less than a minute to go on the Internet or to use your computer or to walk down the hall to see this rule. It is absolutely unambiguous. It is absolutely easy to find. This isn't something like in Pioneer where they use different words and they could have been confusing and he had multiple clients. This is not that case. Well, let's suppose it's a computer program. It's a software calendaring package, and the attorney enters in the correct dates, and the software package spews out the wrong reminder. Then I think you may have it. Why is that any different from this case? Because here you're relying on, I think we all rely on the computer situation. Whether that would be absolutely excusable or not, we could argue that. And the reason we could argue it is because all of us can walk down the hall a few feet, pick up that book, and look at it. If we don't understand what it is, it's a very easy thing to do. My question to you, sir, is you could do that with a computer program, too. Let's say you understand that. And you could say, well, sure, you should mechanically count it out as well. Of course, you're right. And I'm pointing out that there are several ways to do this, including walking down the hall, including using a computer that would normally be far more reliable than relying on, and particularly an experienced trial and appellate lawyer, to be much more reliable than relying on a non-legal assistant. But I'm not sure what any of that gets you. I mean, the lawyer goes down the hall, he reads the rule, he can make the same mistake. He could. There's nothing more likely about the paralegal misreading 3460 than the lawyer. I mean, it's different than if I tell my secretary, go read Roe v. Wade and tell me what it holds. Or, you know, a recent Supreme Court case comes down and I say, well, I'm not going to bother reading it. I'm going to have my secretary read it and tell me what it says. That's delegating something that only a lawyer can do to a non-lawyer. And that is negligence. That is gross negligence. I think we can all agree with that one. But reading a number, and particularly, as a similar suggestion, I mean, this is somebody who's used to reading numbers in rules and who does this for a living. Is there any indication that the delegation itself made it more likely that an error would occur? I think any delegation to a non-legal party makes it more likely that an error is going to occur. What if the lawyer is dyslexic? So he delegates to somebody who knows is a very good ‑‑ you don't know dyslexic lawyers? And so he says, look, I don't read numbers so good. I don't know what I'm saying. I thought it was ‑‑ It's a far field in the facts here. We don't have a dyslexic lawyer. We have very skilled lawyers. May I ask you what can ‑‑ what is the proper role of the paralegal then? What is, if you were writing an opinion, what ‑‑ is it permissible to delegate to a paralegal? I don't think it's permissible to delegate any legal responsibilities. Now, you may delegate ‑‑ But what does that mean? What is a legal responsibility versus a non‑legal responsibility? Well, this was a legal question. And any legal question, a paralegal can usually assist you and not necessarily give you legal opinions. Well, I'd like to ‑‑ could you give me an example of a non‑legal question that you can ask? Other than is it raining? Paralegals usually ‑‑ well, they do do filing dates, but you usually check them. Yeah. And they ‑‑ So it's okay for the filing dates. So the problem here is that the lawyer didn't check each one? Is that ‑‑ Well, you have to be responsible for what the paralegal does. Who is responsible? I can't say to myself. He's liable for malpractice. I don't get why it matters that the lawyer is responsible for the paralegal's error. Because the rule is about not whether the lawyer is responsible at all. He is. It's whether the district court can give the lawyer relief for his careless mistake. Well, if we give relief for paralegal's mistakes, I think that's going to open a very giant door. Because under those circumstances, we can all ‑‑ Didn't Congress and the Supreme Court already open the door? And anything will be forgivable, excusable. Can I ask a question? I don't think that's true. That's not our legal responsibility. Excuse me. The net consequence here is an additional 30 days in which to ask for a notice of appeal. Does that matter, the fact that there's a 30‑day limit on all this to begin with? It is. So unlike some of the other rules in which excusable neglect operates, the stakes here are fairly minor. They're not minor in the sense of the rule of law. They're not minor in the sense of what the other cases from this district have said, both reported and non‑reported, have all said in almost unanimity that you can't say no harm, no problem. So we don't have to worry about legal rules. We can say, what's your deal? Let's not even worry about what the legal rules are. It didn't harm anybody, so it doesn't count. That almost was absolute unanimity. The cases from this circuit have said that's not true. And I believe that they are absolutely right. That's why we're sitting here on bonk to decide whether we were right or wrong. That's why we're sitting here on bonk to decide whether we were right or wrong about that. So the question is, in making that decision, do we take into account the particular context here, that is for rule 4 in which the total consequence of giving an excuse for neglect is 30 days? The same thing is true with all of the cases that have been in this circuit and in others. You have to ‑‑ 60B, it's a year. But here we're talking 30 days. Rule 4 cases, all of them on 30 days. I understand that, but I'm just asking. To me, it's consequential that all we're talking about is 30 days. In terms of what's excusable, you think a lot more would be excusable when the consequences are fairly little. There is always a situation in which what is excusable is only certain situations. But the law is a science in which we all have to live and say, well, it was only 30 days or it was only 10 days or you could have asked for the same relief yourself. Counsel. Somewhere we have to have rules. Yeah. I think we understand. You have used your time. We helped you use it, so we'll give you two minutes on rebuttal if you want to use it. You don't have to use it. May it please the Court. My name is David Boies and I represent the Andrews parties. Every time a lawyer makes a mistake like this, obviously the lawyer is responsible. A lawyer may delegate, but the lawyer is ultimately responsible. And every time a lawyer makes a mistake like this, it is discouraging, frustrating and embarrassing. The issue, though, under Pioneer and I believe under this circuit's decisions is not whether it is a mistake, but whether under the balancing test set forth in Pioneer it represents excusable neglect. And I think there are two issues here. One issue is can you ever delegate calendaring to a non-lawyer? And second, what happens if that non-lawyer makes a mistake? Here the non-lawyer. Why is that even the issue? I mean, why isn't the issue a lawyer made a mistake? I don't care whether he made it by misreading it himself or by relying on someone else who misreads it. The rule could not be clearer. The mistake required skipping over the entire subparagraph A and the entire lead-in clause when the United States or its officer or agency is a party in order to get to 60 days. So I am unaware of any case in any jurisdiction, including ours and including the circuits I mentioned, where the first, second, third, seventh, eighth and eleventh have all said that when there is a mistake of this sort with respect to this rule that is clear and unambiguous without anything more, there is no excuse for it. Your Honor, for example, in the Spizer case in this circuit in which the court held that there was not excusable neglect, it affirmed a district court finding that there was not excusable neglect. The court said that my point is that everybody who has looked at this precise question of interpreting a clear and unambiguous rule has said that's not excusable. There's always been something more. Your Honor, I think that that's not accurate. Okay. I think that if you look at page 886 of the Spizer opinion, the court is talking there about an attorney's egregious failure to read and follow clear and unambiguous rules. And it says that might sometimes be excusable neglect. Yes. And the court goes on on the very next page to say in this case, the Spizer case, where the court finds you had an egregious failure to read and follow clear and unambiguous rules, it says the district court could have decided this either way. It says the district court decided against excusable neglect, and because of the broad discretion given the district court, we're going to affirm that decision. But is there any circumstance which would be inexcusable under any circumstances? I mean, suppose what had happened here was that the lawyer had not had a calendar clerk, had not looked himself, and had no idea what the rule was and just pumped it. Would that be inexcusable? It would be inexcusable, Your Honor, if you had somebody who made no effort and simply ignored it. And one illustration is the unreported case that counsel for the other side cites, the Reynolds against Wagner case, where what you had is not a reported case. We don't want to hear about it. Okay. Thank you. But the real question is in how you frame the question, because you say, can you ever delegate calendaring to a non-lawyer? I think the answer is yes, calendaring. But that really begs the real question. Can you delegate the interpretation of Rule 4 to a non-lawyer? And I'm having trouble understanding if a lawyer's failure to read a rule that is as clear as Rule 4 is excusable neglect. I'm not sure what wouldn't be excusable neglect. Well, Your Honor, in this case, you had a situation in which the calendaring personnel were operating in a system that is widely used in other firms. It is something where the calendar person here was hired from another large firm where he had performed successfully. He was somebody who had performed calendaring functions in the Southern District of New York. It was a system that had been employed and had an unblemished record prior to this incident. Well, it's garbage in, garbage out. In other words, the calendaring clerk comes back to the lawyer and he says, according to FRAP Rule 4, we get 60 days. Well, if you have 60 days, I have 100 percent confidence in that calendaring system, like my firm, your firm, and many other firms have, that it will give you 60 days out. The problem is if you tell it 60 days instead of 30 days, it gives you 60 days. Sure. That's the non-infallibility of it. But what we have to focus on is the 60 versus the 30, don't we? Absolutely, Your Honor. Okay, so tell me how it is that this calendaring system is infallible when calendar clerk says to the lawyer, FRAP 4 says 60 days. Isn't that the lawyer's obligation to say, oh, FRAP 4, in our case, says 30 days. We're not the government. Yes, Your Honor. I think that that obviously would have been the right thing to do, the proper thing to do, the desirable thing to do. But what I'm saying is that in this firm and in other firms, the calendaring personnel do not merely take what the lawyer tells them and enter it in the calendar. But that is disturbing. I mean, in fact, for me, the hardest part of this case is I would think that a federal litigator shouldn't have to look up anything to know that the time of appeal is 30 days. Your Honor, I agree with that. Or, you know, you read the rule every time. Yes. You reread the rule every time. And there's like one fundamental thing on appeal, and it is you're not the government. You get 30 days. So what I'm having trouble understanding is, you know, we're sort of bouncing this off to this well-trained calendar clerk. But the well-trained calendar clerk at least had the right rule, Rule 4, and says to the lawyer, Rule 4, why is it then excusable neglect for the lawyer to say, yep, because I'm out of town, I'm busy, you know, just file it, docket it? Because, Your Honor, first, you had here somebody who had performed this same function, that is, reading the rule and entering the calendar number. In other firms successfully, in this firm successfully, it was a – it was something that there was a – and when he was first hired, as the record shows, when he was first hired, they double-checked his work to make sure that he was getting – he was able to perform that function. He performed it flawlessly. But he was still making a legal determination. He read the wrong section, the wrong subsection. And the judgment as to whether you pick subsection A or subsection B is a legal judgment. You – I mean, that's not something that you can delegate. I mean, it's different from misleading a number, right? Yeah. Well, I think you're right, Your Honor, in a sense. Any time you read a rule, it is – it is in some sense is a legal function. But here – Some sense or in every sense? Well, Your Honor, it is not a legal function in the sense of making an interpretation. This was not something – this is a clear and unambiguous rule. Right. Because it is a clear – So it's not like the bankruptcy case where you kind of had to figure it out. It is not, although this circuit in Bateman and Bione's has clearly said that the pioneer principles apply outside the bankruptcy. And in Spicer, this Court said that the pioneer principles apply to an attorney misreading, egregiously misreading, a clear and unambiguous rule. I mean, I don't think that that's the – I think we all agree that we're going to try to – we're going to decide this under pioneer. The question is fitting it into pioneer what it says. Usually it's not. Sometimes it could be. The question is when you have a circumstance as pristine as this, which is simply the lawyer's failure to read 30 versus 60 days, can that be an excusable neglect? In other words, Judge Weimer talks about these other cases, 1st, 2nd, 8th, 11th, 3rd. Everyone that's considered this says this may be this one circumstance where you don't have a get-out-of-jail-free card. Now, why should the Ninth Circuit take a different position? But, Your Honor, I think with respect, that's not an accurate statement of the Ninth Circuit because I think the Ninth Circuit in Bateman – We are going to decide this. So I'm asking you, forget what we said before. Forget what we said before. The question is why should we now take a position that really is at odds with every other circuit that considered it when you have such a pristine situation as this? Because I think, 1st, I think you were right when you said it the first time. I think you were right in Brioni's. I think you were right in Bateman. And I think you were right in Spicer. And the reason that you were right is because the Pioneer test makes clear that it is not supposed to be a per se rule. That even in situations where there's a – Or that there may be situations where you do have a per se rule. I mean, that's what I was trying to find out is that there may be situations that are simply inexcusable and nothing else matters. Yes, although, Your Honor, what I would say is that that's not a per se rule because what is happening is the district court in its discretion is looking at all the circumstances. Well, suppose the district court in its discretion said, well, I understand that you didn't ask anybody, didn't look up anything, and didn't know anything and just decided to take a stand that it might be 60 days, but I find that excusable. I would think you would then have a situation where the district court's abused its discretion. And there can be situations where the district court has abused its discretion. But one of the principles that I think runs through the jurisprudence of all the circuits, not just the Ninth Circuit, but all the circuits, is that this is an abuse of discretion standard. You abuse your discretion if you make an error of law. And the other circuits have said in the circumstance where there is a clear and unambiguous rule and nothing more, then if that's not inexcusable, nothing is. Therefore, it's inexcusable. Your Honor, I don't read the other circuits' opinions as being as clear as the Court does there. And in particular, I think the Court would agree that the Eleventh Circuit at least takes it. No, but the Eleventh Circuit, there are absolutely two cases in the Eleventh Circuit, one of which says exactly what I said in the circumstance where the rule was clear and ambiguous. And in the other case in the Eleventh Circuit was one where the lawyer got it right and told the secretary to send out a notice or do something that would have been correct. And the secretary goofed up. But the lawyer got it right. So in that circumstance, the Eleventh Circuit said, well, look, it's sort of an effect beyond the control of the lawyer. He did everything he could do to make it right. Except, Your Honor. That's not true here.  And I think what the Pioneer case says, and leaving aside the Ninth Circuit cases just for a moment, is that you have a situation where the question is not whether there is neglect. There's always neglect in these cases. The question is whether it's excusable or not. And here you have a situation in which you look at all of the circumstances. And one of those circumstances is that you had something that was working, had worked, consistently had worked. It was the kind of thing that there was reasonable basis for relying on the fact that this was going to work. But can you help me with that? You talked about a system. And yet all you really talked about is a person, a non-lawyer paralegal. Is there anything more to this system than just the hiring of a person that you entrusted to calculate these dates? It is the record below is pretty much limited to this particular individual. There is some stuff in the record, I think 71 and 72, that talks about the general calendaring system in which you hire people who do this. They're all experienced. Their purpose is, as specialists, simply to take the rules and look up the rule for the particular event and write it down. There is a sense in which that's obviously legal work in the sense that you're reading rules, but it is. Well, you know, I don't know. I mean, to me, the clear-cut cases, unlike what's suggested by some of the questions from other colleagues, to me it's an easier question. If it's just sort of misreading, it's like a typo. To me, delegation there strikes me as being okay. You know, somebody on lawyer chemistry, as well as everybody else. To me, the hard case is the interpretation case where you've got two subsections. One says 30, one says 60, and then you need somebody with legal training to figure out which subsection applies. Now, it's not a tough legal question in this case to figure out whether one subsection or another subsection applies, but it is a legal judgment, and legal judgments are not something – I mean, it seems to me that delegating that responsibility to a non-lawyer is inexcusable. Although, in this case, I would submit that the issue between A and B is not a legal issue. It's a factual issue. And one thing that is clear from the record is that the – Well, it's an interpretation of the rule. It is – if the rule only had one number in it, and it's like a typo. You know, you read it and you get the number wrong. If you've got two subsections, now you're looking, you have to read the one section, you have to read the other subsection and make a judgment as to which of the two subsections applies. It's not a difficult judgment, but it's nevertheless a legal judgment. Delegating that kind of thing to me strikes me as a much more questionable practice. Although I would suggest, Your Honor, that here the only issue of reading is to look at the number and to know whether the United States is a party or not. And here the record is clear that the calendaring professional knew that the United States was not a party. It's a little more complex than that. How many times have you read a case and sort of missed the key phrase? It's happened to me. I'm sure it must have happened to you at some point. You know, there's sort of the key phrase, and somehow you read it and you miss it. And it strikes me that we don't have any findings on this, so maybe it's just speculation. But what strikes me is that the paralegal read the rule and somehow sort of missed the phrase, which is a way in which legal interpretation can get off the track. It's not misreading a number. It's not a typo. It is failing to do a competent reading of a legal provision. And that gets us back to the question of whether reading rules, reading rules itself, is something that a lawyer can delegate. Although I think that it's different from saying I've looked up the rule, the number is 30, and then the calendaring clerk types in 60. And this was not a typographical error in the sense that he saw 30 but typed 60. This was a situation in which, as he says quite candidly in the affidavit that he submitted to the district court, for the first time out of hundreds and hundreds of times of doing this, he simply made a mistake. Let's say you used him again. Because the mistake, here's what bothers me. Maybe you can help me out. In this perfect calendaring system that your firm has, if it had just gone about its merry way and he calendared it for 60 days and then he says to the lawyer, not to worry, I'm calendared, you know, that might be one situation. And then we wonder, well, did the lawyer make sure he calendared the wrong date? But here we have something additional. And I'm interested to know your take on this. It's not like in the subterranean bowels of New York or elsewhere among that this assistant has typed in 60 and said, yeah, he actually emails or calls back to the lawyer and he says, rule 4 says we have 60 days. So it isn't even like he's just off on his merry calendaring system. He advises the lawyer what the rule says. Doesn't that make this case even more distinct in terms of the lawyer's obligation, Mr. Haynes's obligation? Your Honor, I think that helps in terms of excusable neglect. In other words, they used to say, oh, well, he read rule 4, so I don't have to? No, no, because what it shows is there was an effort here. I would suggest that the cases that you see in this circuit and other circuits are grappling with two problems. One of those problems is we want to be sure that people take the obligation to comply with the rule seriously. And second, we want to avoid the moral hazard problem of where somebody can, after the fact, come up with an excuse for why they missed a deadline, and it's not the real excuse. And I suggest that if you look at all the cases that you have in this circuit and other circuits, what you see are the courts grappling with how do we deal with those two objectives. Now, one way was the dissent in Pioneer, which was to say we have an absolute per se rule. The Supreme Court in Pioneer says no, and I particularly commend footnote 14 in the Pioneer discussion as to why there's not a per se rule. But if you're not going to have a per se rule, then what the cases since Pioneer have been doing is they've been struggling to find out, well, how do we balance a need to know that these people really took it seriously and it's not a fabricated excuse after the fact? So what's the effort? Is the effort to read it or the effort to have a calendar clerk? I'm sorry, Your Honor? What's the effort? The effort is to get it right, to get the right date. I understand. But in this case, what constitutes the effort? Well, having a calendar system or having the calendar clerk email the lawyer, is that the effort? No, no. What is it? What I would say is the effort is the calendaring system that's set up. All right. And what I would say is that one of the things that demonstrates that this is a case where you didn't have an excuse made up after the fact and that there was an effort to get it right, didn't get it right, and should have gotten it right, but they didn't get it right, but there was an effort to get it right. Counsel, the effort, if you have a second, if you have a small law firm, solo practitioner, who has no calendar system because he can't afford it, this doesn't happen, but he does the same thing. He goes and picks up the rule book, looks at it, and makes exactly the same mistake, reads the second paragraph instead of the first one. That's not excusable, or it is, because that was an effort. No, I think that, Your Honor, I think that if he picks it up and makes an effort to do that. And it's a clear, unambiguous rule.  He just simply reads the wrong subject. He just reads it wrong, and he's somebody who's been diligent before, who's got it right hundreds of times before, who does all the other things that the district court looked at. Then I think that's excusable neglect, too. In other words, I don't think that the fact that you delegate it to a calendaring system insulates you. I don't think it makes you better off. Okay. So this just comes down to it's excuse equals effort. I go, I pick up the book to read, and that's enough. Is that what we're at? No, Your Honor, I don't think it's the way we are. Bottom line of this opinion is this was not an abusive discretion because there was effort here, and the effort was to pick up the rule book. I think it's not just that there was effort. I think that it's the reasonableness of the effort to some extent. I think it is the fact that you had a system that had worked. I think it is that you had a system that had worked in other contexts. I think it is a situation that you tried to go out and hire people who had the right experience to do this. I think it's also, and this is not something that has been in the Ninth Circuit opinions, but it is in the opinions of other circuits, like the Seventh Circuit, in the Rob against Northwestern Railway case that we cite in our papers, where the Court says one of the factors that you can take into account is whether these attorneys have gotten it right consistently. That is, whether they have met their deadlines in this case and in other cases. That's one of the factors. Would you have a less good argument if you were making this a month from now and used the same person and they made another mistake? Yes, Your Honor. I think that's right. I think that if what happens, and we would have a less good argument if this person had made multiple mistakes in the past. I think we would have had a less good argument if this had been simply a person that we had hired, not supervised, not trained, and didn't have a record. I think all of those cases, all those situations would have made it a less good case for us. And that is the reason why I think this is committed to the sound discretion of the trial judge, because the trial judge looks at all of these variety of factors. The thing that a court of appeals will do is to come up with either a safe harbor or a per se rule. And I suggest that under the pioneer analysis, and particularly footnote 14, and under the analysis, which I think is the right analysis. It's not only what this circuit has done in the past, but I think it's right. When you look at Brioni's and you look at Bateman and you look at Spicer. What if the district court had gone the other way after hearing the exact same evidence? Would you lose here on an abuse of discretion? I think we'd have a very tough argument, Your Honor. You'd still tie. You'd still be tied. We'd still try. We'd still try, Your Honor. But I think as the court ruled in Spicer, in that situation, we'd have a very uphill battle. Aren't we looking at the wrong level of generality looking at this rule? Isn't really the question we need to be asking is, is delegating the reading of rules something that a lawyer can do? I mean, you concede, I'm sure, that there are rules that are ambiguous and there are rules that you will read and it turns out they're not applicable. It's covered by something else or there's case interpretation and so on. And we don't, you know, this lawyer doesn't know what this rule says. If he did, he wouldn't have made the mistake. So what we have is a system in place where a lawyer, without knowing what the rule is and what ambiguities it may contain, relies on the efforts of a non-lawyer to interpret and apply it. What happens in this case is a simple mistake, but it could have been a very complex rule, and the lawyer would not be the wiser. He'd be relying on the system. And isn't it, isn't really, if we deal with the question of delegation, isn't really the issue is delegating on a wholesale basis the interpretation of legal, of rules involving deadlines, egregious, more than just negligence, it's egregious malpractice. If you had a situation where you had a complicated, ambiguous rule, I think we don't know. Counsel, I'm missing, I must be missing something. The district court, as I read the district court's order, it did not hold that the neglect that was excusable was the delegation. I don't think the delegation even appears in the order. It said the district court, who's not exactly a novice, said that the missing of the deadline by the lawyer was excusable. Yes, Your Honor. I read it. Is that wrong? No, you're exactly right, Your Honor. And I think the district court looked at it the way I think we would look at it, which is to say that what the lawyer did through the clerk was the lawyer's responsibility. And what the district court would do. Well, yes, but, and so I don't know why we're talking. Is it your position that this is more excusable because there was a delegation? No, Your Honor. Is it your position that it would be the same result if the lawyer had not delegated and had missed the deadline himself? By reading it himself. Yes, Your Honor. So is that what happened? Yes. The clerk says, luckily the clerk gives him the right rule so the lawyer can go right to it. So now what you're having us say is that given the factors, and we don't weigh them all equally, I think everybody would agree, that a lawyer who misses, who doesn't read the rule, and therefore misses the deadline, that that is excusable neglect. Is that, I'm trying to figure out how we would break this up. Well, I think that the reason that I get into the training and the background and the experience of. . . Why don't we ask my question first. Is that the rule? No. And the lawyer misreading or failure to read a rule is excusable neglect. No. I think that if the lawyer simply didn't look up the rule at all, didn't get. . . Didn't look up the rule. And did not ask anyone else to look up the rule. But the else person. . . So that now gets us back. . . In other words, what we're trying to figure out from the earlier questions is whether the result would be the same with or without the legal assistant. And you were saying, well, it really is the same. But now we're slipping back. So the only way that you can get the lawyer out of the hole, as I understand your argument, is his reliance on the legal assistant. Since he didn't read the rule himself. Yes, Your Honor. Right. He was in the hotel room at the time, right? Yes. I understand. Yes. I mean, what I'm saying, when I say the fact that the delegate doesn't get him out of the hole, what I mean is somebody reads the rule. Calendaring personnel or the lawyer reads the rule and somebody makes a mistake. We're not saying that because the lawyer delegated it to an experienced calendaring professional that that gets the lawyer off the hook. We automatically. . . But delegating itself can be a negligence. What if the lawyer says, you know, I'm off vacation in Hawaii, so I'll ask my secretary to draft a brief. She's been with me 20 years. You know, she knows my writing style. She knows how to use Lexis. And, you know, she misses a case. She misses a case. You know, she writes a very good brief but misses a key case. Surely that delegation and the lawyer signs the brief when he comes back or has the secretary sign it for him and files it. That's. . . That's malpractice, Your Honor. Well, it's more than malpractice. That's not excusable neglect, is it? It couldn't possibly be. The only point I would make is that that issue, whether merely delegating it was itself takes it outside, was not considered by the district court. I think that if you were to decide that that was the critical issue, that just any delegation might make it not an issue. You'd have to send it back because there would be a whole lot of questions you'd have to look at. Counsel, your time has expired. Thank you very much. Just briefly, if I may, I just would like to read a couple of quotes from Pioneer and Kyle, which I think are dispositive, really, of this issue. Well, Kyle can't be because part of our job is to decide whether to retain or overrule or limit or distinguish Kyle. Excuse the word dispositive, instructive, but Pioneer might be. And in Pioneer, they were looking at a bankruptcy form, and the bankruptcy form, the court said, the bankruptcy form 16 contained a dramatic ambiguity which could well have been confused by even persons experienced in bankruptcy. That probably was at least one of the major reasons involved, and I think they said that. But there is no confusion. There can be no confusion as to you have 30 minutes. Let me ask you about the unambiguous rule issue. Let's suppose the lawyer says it would be negligent for me to delegate. I won't delegate. And he's a very conscientious lawyer, and he gets back from a little trip to Philadelphia that he has to make in the morning, he gets back to the office, he takes some calls from the hospital where his wife is undergoing an emergency procedure, and then he gets back to work. And he gets around to this case at 2 in the morning after it's fairly beginning day, and he's propping his eyes open, and he just misreads that very plain rule. Inexcusable? Yes, because that would be, and now I'm going to read again from Pioneer, Inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect. And even under those circumstances, I would say that is not excusable neglect. So you think the Supreme Court's use of that word usually was accidental rather than on purpose? I mean, the word usually implies usually. Not sometimes it is. But you're saying usually means never. No, I didn't say that. I say that a lawyer, one of the first things we learn in law school is the responsibilities of a lawyer. And a lawyer has certain responsibilities himself to do those things himself. And he can't delegate those to a non-lawyer or say I was tired or I waited up until 2 in the morning. We would have absolute chaos. Counsel, your time has expired. Thank you. Thank you. I think we understand the Court's position. The case has started. And this is a decision that concludes the Court's argument. And the Court stands adjourned. Period. Period. All persons having a difference of the honor roll, the United States Court of Appeals has adjourned. And now the Court, this Court, the session now stands adjourned. Thank you.
judges: Schroeder, Kozinski, Rymer, Kleinfeld, Thomas, Silverman, McKeown, Gould, Berzon, Rawlinson, Callahan